(51 South. 704.)

No. 17,588.

Succession of GRAVIER.

(Feb. 14, 1910. Rehearing Denied March 14, 1910.)

*(Syllabus by the Court.)*

1. BASTARDS (§ 105*)—SUCCESSIONS—ILLEGITIMATE CHILD ACKNOWLEDGED BY MOTHER.

The brothers and sisters of a child acknowledged by her mother succeed to her estate, if there is no legal impediment.

[Ed. Note.—For other cases, see Bastards, Cent. Dig. §§ 263, 264; Dec. Dig. § 105.*]

2. BASTARDS (§ 104*) — INHERITANCE FROM — NECESSITY FOR ACKNOWLEDGMENT OF ILLEGITIMATE CHILDREN.

Acknowledgment is a prerequisite to the inheritance by brothers and sisters of the estate of a sister born out of wedlock.

[Ed. Note.—For other cases, see Bastards, Cent. Dig. §§ 257–262; Dec. Dig. § 104.*]

3. BASTARDS (§ 104*)—SUCCESSIONS OF ILLEGITIMATE CHILDREN.

Persons, issue of an illegitimate union, leave no succession unless they are acknowledged. The property goes to the state by operation of law.

[Ed. Note.—For other cases, see Bastards, Cent. Dig. §§ 257–262; Dec. Dig. § 104.*]

Appeal from Civil District Court, Parish of Orleans; George H. Theard, Judge.

Proceedings for settlement of the estate of Delphine Gravier. Application of the public administrator to be appointed administrator or curator, which Felicite Jamet and another opposed. From a judgment allowing the application, opponents appeal. Affirmed.

Wm. Winans Wall, for appellants. H. L. Favrot, Carl C. Friedrichs, and Ernest T. Florance, for appellee.

BREAUX, C. J. The public administrator for the parish of Orleans asks to be appointed by the court as administrator or curator of the estate of the late Delphine Gravier, a free person of color, who departed this life intestate in 1881. She owned real estate.

Felicite, the widow of Jean Jamet, and Bernard Gravier, residents of New Orleans, opposed the application for letters of administration on the ground that they are the heirs at law of Delphine Gravier, being descendants and heirs at law of Bernard Gravier. They allege that there are no debts.

They set up in their opposition that Delphine Gravier had two sisters, to wit, Palmyre and Fifi Gravier, and a brother, Bernard Gravier.

Fifi died in 1879 (April 17), and Palmyre in 1885. Neither left ascendants nor descendants.

Bernard Gravier, I, the brother of Fifi and Palmyre, died August 16, 1868.

The opponents are descendants of Bernard Gravier, I.

They ask to be recognized as heirs at law of Delphine Gravier, daughter of Bernard Gravier, I, and prayed to be permitted to go into possession of the property she owned at the time of her death.

Bernard Gravier, I, father of Bernard Gravier, II, and of Fifi and Palmyre, and of Delphine Gravier, before named, was a white man. The mother of Bernard, II, and of Fifi and Palmyre and Delphine, was a colored woman. It follows that Bernard Gravier, II, and the others before narrated, were colored. The relationship of the parties is not an issue. It is virtually conceded that it exists as alleged.

As far as known they were never slaves, but they owned slaves.

The questions involved are of law.

The grounds are that the rights of opponents are regulated by Code, art. 920.

The different articles of the Code relating to children born out of wedlock have been considered.

The right of a "father or mother, or both, who have acknowledged a natural child, deceased without posterity," is provided by article 922 of the Code.

The estate belongs to the father or mother, or both, who have acknowledged the child.

The acknowledgment before mentioned is a prerequisite to inheritance from the child born out of an illicit union.

Neither the father nor the mother had acknowledged the children.

Had they attempted to acknowledge these children, the act of acknowledgment would have been a nullity beyond all question, under the act of the Legislature adopted in March, 1831 (Act No. 37), afterward embodied in article 217 of the Code.

Prior to that time—that is, March, 1831—the Code of 1825 (article 95) provided that free white persons were incapable of contracting marriage with free persons of color.

The provisions were not as drastic as made by the cited act.

The acknowledgment of an illegitimate child shall be made before a notary and two witnesses, by the father and mother, or either of them, when it shall not have been made in the registry of birth or baptism.

There are other methods of acknowledgment.

The point is that, in order to inherit, there must be acknowledgment of some kind equivalent to the special requirement required. There must be an avowal, or a proof of equal value, by the mother. Old Code, 1473; Dupre v. Caruthers, 6 La. Ann. 161.

It is provided in the Code that if the father or mother, or both, of a natural child, dies before him, the estate of the natural child passes to his natural brothers and sisters, or to their descendants. Article 923.

By the preceding article 923, the succession of a natural child devolves to the parent who has acknowledged him, provided there is no impediment to the acknowledgment.

Those who succeed under the article last cited succeed to the estate of the father or mother, or both, because of the acknowledgment made by either or both parents of the child deceased. The brothers and sisters inherit the right which the father and mother had acquired by acknowledging the child; otherwise, there would have been nothing for the child to succeed to.

The article cited with confidence by learned counsel in regard to the right of a child born out of wedlock inheriting in the event of his predeceased father and mother, or either, cannot, in our opinion, be considered in the light of authorizing the right of inheritance, although the father or mother had never acknowledged the child; for without such acknowledgment, the father or mother, or both, could have acquired no right, and for that reason none could be acquired by those who inherit from the child who died afterward.

Articles 918 and 923 are related and construed together.

In the three Codes, adopted at different times in this state, the acknowledgment of an illegitimate child is a condition precedent in order that he may inherit.

The first Code—that is, the Code of 1808—only provided as relates to incestuous and adulterous children.

The Code of 1825 also had a prohibitory article against such marriages.

At first the Code of 1870 contained no prohibition upon the subject. It was reinserted in the Code in the year 1894 by special enactment.

Natural children are called to the legal succession of their natural father and mother "when they have been duly acknowledged" is the language of the Code.

The father and mother, we have noted, never acknowledged the sister and brother of opponent.

The opponent cannot be in a better position in law than they (the father and mother) would have been, had they been alive at the death of Delphine and had acknowledged her.

We do not think we should place in the same category illegitimate children acknowledged and illegitimate children not acknowledged. Their rights are different.

All natural children may be acknowledged, save those included in some exception. It follows: The bastard born of white parents may be acknowledged legally, and thereby acquire right of inheritance of his parents, to the exclusion of the state.

The same is true of colored persons among themselves, in so far as bastards of that race are concerned.

In the absence of all evidence of acknowledgment, we must hold that the opponents cannot be classed as heirs.

This brings us to a consideration of the decisions cited and quoted from by learned counsel for opponents.

In the first cited case, the legatees were colored persons. The testator, a white man, was their father. He acknowledged his children by notarial deed in the presence of two witnesses. Compton v. Prescott, 12 Rob. 73 (rendered in 1845).

This presents an entirely different case from the pending case, in that in the last-cited case the children, as before stated, were never acknowledged. Besides, in the cited decision, supra, the court refers to articles of the Code of 1825, which are different from those of 1870. The court in that case takes no account of the act of March, 1831, which

positively prohibits acknowledgment between persons who could not enter into marriage together.

The positive terms of the act of 1831 place the unacknowledged child of an illicit union between white and colored in the same category with incestuous and adulterous children, in so far as relates to the impossibility of acknowledging them.

In view of the positive terms of the different articles on the subject of acknowledgment and regarding illegitimate children, we must decline to consider the cited case as authority in this case. The facts are not the same with the case here. Besides, we are not in accord with the terms of the decision. We cannot follow it as an interpreting decision of the laws, even at the time that it was rendered. The decision is completely at variance with the before-cited act of 1831. It cannot be considered as a correct exposition of the law.

In the Hebert Case, 33 La. Ann. 1099, under the codal provision of 1870, now repealed, the court decided proof of acknowledgment similar, white or colored, and did not consider that there was impediment under the law at that time. That decision, under a law now repealed, is not pertinent.

This brings us to the next decision cited, to wit, Lacolette's Heirs v. La Barre, 11 La. 181. Nothing was said about acknowledgment in that decision. It may be that the offspring in that case were acknowledged, or it may be that they were not. The question not having been decided, the decision cannot be considered pertinent.

The next decision cited by learned counsel for opponent (the first of the Spanish law before the promulgation of the Code of 1808) is Lange v. Richoux, 6 La. 569. It was not decided in that case that illegitimate children not acknowledged could inherit. It was only decided that proof of acknowledgment might

be other than before a notary and two witnesses, a view with which we agree.

There are varying views in decisions. It could not well be otherwise under different laws. In one particular all agree—not a discordant note: The mother of a child born other than justæ nuptiæ is held to the necessity of recognizing her offspring, in order that he may be considered a natural child.

Illustrating: A., born out of wedlock, cannot inherit from his mother, B., by only proving that she is his mother. She must recognize him in one of the ways pointed out by law.

In this case there is no proof of acknowledgment as before stated, nor proof equivalent to those stated as being required of an acknowledgment. There is only evidence that the deceased was the daughter of an illicit union and that opponents were her sisters and brother.

And yet, without the least evidence upon the subject of acknowledgment, opponents would have us decide, despite the fact that article after article requires that there should be some recognition of the offspring, that none the less in this case no evidence of acknowledgment is needed.

With this view we cannot agree. The mother must express some willingness to admit that she is the mother and she recognizes him as her offspring; otherwise jurisprudence on this particular point would be at variance with the plain provisions of the Code.

The law had made it a sine qua non that there should be an acknowledgment.

It may cause some hardship in some cases; but this cannot be considered in passing upon a plain provision of the Code. It is written clearly, and should be enforced as written. The sovereign authority has spoken, and has enacted these articles of the Code into a law. They must be held binding.

It is, therefore, considering that the law

and the evidence is in favor of the applicant, the public administrator, for the administration of the succession of Delphine Gravier, and against the application of opponent, ordered, adjudged, and decreed that the judgment of the district court is affirmed.